FILED

08/14/2018

Clerk of the
Appellate Courts

# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### January 3, 2018 Session

## STATE OF TENNESSEE v. A.B. PRICE, JR. and VICTOR TYRONE SIMS[1]

**Appeal from the Circuit Court for Henry County**
**No. 15680    Donald E. Parish, Judge**

_____

### No. W2017-00677-CCA-R3-CD

_____

This consolidated appeal comes to us following the passage of the Public Safety Act ("the PSA"), which, as relevant here, see Tenn. Code Ann. §§ 40-28-301,-306, changed how non-criminal or "technical" violations of probation are handled in Tennessee. These provisions require the Tennessee Department of Probation and Parole ("the department") to develop, among other things, a single system of graduated sanctions for technical violations of community supervision and an administrative review process for objections by the probationer to imposition of such sanctions. Prior to accepting the Defendants' guilty pleas, the trial court expressed concern regarding the implementation of the PSA, as these consolidated cases were the first in its district to which the graduated sanctions of the PSA would apply. The Defendants then objected to the imposition of the PSA as a mandatory condition of their probation and "request[ed] that the Court find certain of the provisions of T.C.A. § 40-28-301 through § 40-28-306, relative to sentences of probation, to be facially unconstitutional, and, therefore, decline to incorporate them within the judgment." Specifically at issue are the provisions (1) mandating trial courts to include as a condition of probation that the department supervising the individual may impose graduated sanctions for violations of probation; and (2) the extent to which the department's administrative process to review graduated sanctions contested by supervised individuals complies with principles of due process. After a hearing, the trial court issued an extensive order finding these sections of the PSA violated the separation of powers doctrine and principles of due process and equal protection.[2] It is from this order that the State appeals. For the reasons that follow, we affirm the judgments of the trial court.

---

[1]By this court's order, entered on January 25, 2018, these cases were consolidated for purposes of this appeal.

[2] The Defendants also challenged the relevant portions of the PSA as being vague; however, the trial court determined that that the PSA was not vague. Accordingly, this issue was not raised on appeal.

1

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court. THOMAS T. WOODALL, P.J., joined, and filed a separate concurring opinion. ALAN E. GLENN, J., filed a dissenting opinion.

Herbert H. Slatery III, Attorney General and Reporter; Jennifer L. Smith, Assistant Attorney General; Matthew F. Stowe, District Attorney General; and Paul Hessing, Assistant District Attorney General, for the appellant, State of Tennessee.

Robert Hawley, Paris, Tennessee, for the appellee, A.B. Price, Jr.

J. Neil Thompson, Huntingdon, Tennessee, for the appellee, Victor Tyrone Sims.

## OPINION

There is no dispute as to the facts or circumstances that give rise to this appeal. The record shows that when the Defendants initially attempted to enter their guilty pleas, the trial court refused to accept their negotiated plea agreements and "expressed reservations" as to whether the court could accept them because they would be subject to the PSA. The trial court urged the parties to "consider those matters closely" and reset the cases a few weeks for a hearing to be "educated more on those concepts, and . . . create a record on which to make a decision moving forward, realizing that the decisions to be made in these two (2) cases impact not only these two (2) cases, but . . . across the district, and, in fact, the state."[3] At the February 10, 2017 hearing, Lisa Wade, a probation officer, testified generally regarding the procedure under the PSA and provided the trial court with probation statistics and various exhibits including the graduated sanctions matrix. The parties also presented extensive arguments on the constitutionality of the PSA, and the trial court took the matter under advisement. On February 16, 2017, the trial court issued its detailed order declaring the relevant portions of the PSA unconstitutional. On March 31, 2017, Price entered a plea of guilty to two counts of sexual battery and an effective sentence of ten years, to be served on supervised probation but not subject to the PSA. On the same day, Sims entered a plea of guilty to three counts of aggravated assault and an effective sentence of eight years, to be served on supervised probation but not subject to the PSA, and following service of one year incarceration.

To the extent that there are any findings of fact determined by the trial court, they are likewise not disputed by the parties. Our attention is therefore devoted to examining the provisions of the PSA that were struck down by the trial court as unconstitutional.

---

[3] We do not have a transcript of the preliminary hearings on this matter; however, the trial court references the development of the case in its opening comments to the February 10 hearing.

On April 27, 2016, the governor signed into law a bill designated by the legislature as the Public Safety Act of 2016 ("the PSA"). At issue in this appeal are the provisions within Title 40, Chapter 28, which mandated the trial court's grant of probation to be contingent upon a newly created system of graduated sanctions for all non-criminal violations of a sentence involving release into the community. Under this system, the violations are subject to an administrative rather than judicial review process. See 2016 Pub. Acts, c. 906. Each provision is outlined in detail below:

To begin, the PSA defines a graduated sanction to include "any of a wide range of non-prison offender accountability measures and programs, including, but not limited to, electronic supervision tools; drug and alcohol testing or monitoring; day or evening reporting centers; rehabilitative interventions such as substance abuse or mental health treatment; reporting requirements to probation and parole officers; community service or work crews; and residential treatment facilities. Tenn. Code Ann. § 40-28-301.

Pursuant to Tennessee Code Annotated Section 40-28-302, all supervised individuals shall be subject to:

(1) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large and cannot be appropriately managed in the community; or

(2) Sanctions other than revocation as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community.

Tenn. Code Ann. § 40-28-302. Tennessee Code Annotated section 40-28-303, entitled system of graduated sanctions, provides as follows:

(a) The department shall adopt a single system of graduated sanctions for violations of the conditions of community supervision. The system shall set forth a menu of presumptive sanctions for the most common types of supervision violations, including, but not limited to: failure to report; failure to pay fines and fees; failure to participate in a required program or service; failure to complete community service; and failure to refrain from the use of alcohol or controlled substances. The system of sanctions shall take into account factors such as the severity of the current violation, the supervised individual's previous criminal record, the number and severity of any previous supervision violations, the supervised individual's assessed risk

3

level, and the extent to which graduated sanctions were imposed for previous violations. The system shall also define positive reinforcements that supervised individuals will receive for compliance with conditions of supervision. The system shall clearly specify as to each type of sanction whether the supervised individual has the option to object and seek administrative review of the sanction.

(b) The department shall establish by policy an administrative process to review and approve or reject, prior to imposition, graduated sanctions that deviate from those prescribed.

(c) The department shall establish by policy an administrative process to review graduated sanctions contested by supervised individuals under § 40-28-305. The review shall be conducted by the chief supervision officer, who shall be impartial and trained to hear cases regarding graduated sanctions for violations of supervision conditions.

(d) The department shall establish and maintain a program of initial and ongoing training regarding the system of graduated sanctions for probation and parole officers.

Tenn. Code Ann. § 40-28-303. Tennessee Code Annotated section 40-28-304, entitled conditions of community supervision, further states:

For individuals placed on supervised probation, the judge of the court having jurisdiction over the case shall determine the conditions of community supervision, which shall include as a condition that the department supervising the individual may, in accordance with § 40-28-305, impose graduated sanctions adopted by the department for violations of the conditions of community supervision.

Tennessee Code Annotated section 40-28-305, entitled authority to impose graduated sanctions, states:

(a) Notwithstanding any rule or law to the contrary, the department may impose graduated sanctions.

(b) A probation and parole officer intending to impose a graduated sanction shall issue to the supervised individual a notice of the intended sanction. The notice shall inform the supervised individual of the violation or violations alleged, the date or dates of the violation or violations, and the graduated sanction to be imposed.

4

(c) The imposition of a graduated sanction or sanctions by a probation and parole officer must comport with the system of graduated sanctions adopted by the department under § 40-28-303. Upon receipt of the notice, the supervised individual shall immediately accept the sanction or, if permitted under the system of graduated sanctions, object to the sanction or sanctions proposed by the probation and parole officer. The failure of the supervised individual to comply with a sanction shall constitute a violation of probation, parole, or post-release supervision. If the supervised individual objects to the imposition of the sanction or sanctions, when permitted by the system of graduated sanctions, the individual is entitled to an administrative review to be conducted by the department within five (5) days of the issuance of the notice. If the department affirms the recommendation contained in the notice, the sanction or sanctions shall become effective immediately.

(d)(1) A notice of a graduated sanction may not be issued for any violation of probation or parole that could warrant an additional, separate felony charge or Class A misdemeanor charge.
(2) Notwithstanding subdivision (d)(1), a notice of a graduated sanction may be issued for a positive drug test.

(e) Upon successful completion of a graduated sanction or sanctions, a court shall not revoke the term of community supervision or impose additional sanctions for the same violation. Notwithstanding this subsection (e), a court may consider an individual's supervision and sanctions history when adjudicating subsequent violations.

(f) The department shall regularly provide notice of sanctions imposed upon probationers to the sentencing court and the prosecutor's office for each jurisdiction.

(g) If a probation and parole officer imposes a graduated sanction, the officer shall:
>(1) Deliver a copy of the sanction to the supervised individual; and
>(2) Note the date of delivery of the copy in the supervised individual's file.

Tennessee Code Annotated section 40-28-306, entitled monitoring graduated sanctions, states:

5

The chief supervision officer shall review confinement sanctions recommended by probation and parole officers on a quarterly basis to assess any disparities that may exist among officers, evaluate the effectiveness of the sanction as measured by the supervised individuals' subsequent conduct, and monitor the impact on the department's number and type of revocations for violations of the conditions of supervision.

Tenn. Code Ann. § 40-28-306.

## ANALYSIS

**Jurisdiction**. As in any case, the threshold question presented is whether this court has jurisdiction. Although the State frames the issue in this appeal as the trial court's imposition of a special condition in contravention of State law, in reality, the Defendants objected to the inclusion of the provisions of the Public Safety Act as part of their probation. As we see it, the issue, properly framed, concerns the trial court's *refusal* to impose the graduated sanctions matrix as a condition of probation pursuant to the PSA. The State assumes jurisdiction of this appeal based generally on Tennessee Code Annotated Section 40-35-402 (2014) ("The district attorney general in a criminal case may appeal from the length, range or manner of the service of the sentence imposed by the sentencing court."). We agree that appellate jurisdiction has been conveyed, albeit on explicit grounds. Section 40-35-402(b) provides for a State appeal of a sentence limited only to the following grounds:

(1)     The court improperly sentenced the defendant to the wrong sentence range;
(2)     The court granted all or part of the sentence on probation;
(3)     The court ordered all or part of the sentences to run concurrently;
(4)     The court improperly found the defendant to be an especially mitigated offender;
(5)     The court failed to impose the fines recommended by the jury;
(6)     The court failed to order the defendant to make reasonable restitution; or
(7)     The sentence is inconsistent with the purposes or considerations of sentencing set out in §§ 40-35-102 and 40-35-103.

Tenn. Code Ann. § 40-35-402. As mentioned above, the issue properly framed is the trial court's *refusal* to impose certain conditions of probation to the Defendants cases. We therefore derive jurisdiction from subsection (b)(7) and review this issue to assure fair and consistent treatment of all defendants by eliminating unjustified disparity in sentencing and providing a fair sense of predictability of the criminal law and its sanctions.

6

**Standard of Review.** This appeal involves questions of law only. Therefore, our review is de novo with no presumption of correctness to the trial court's legal conclusions. See Hughes v. Tennessee Bd. of Prob. & Parole, 514 S.W.3d 707, 712 (Tenn. 2017) (citing Waters v. Farr, 291 S.W.3d 873, 882 (Tenn. 2009) and Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 836 (Tenn. 2008)). "We are charged with upholding the constitutionality of statutes where possible, State v. Pickett, 211 S.W.3d 696, 700 (Tenn. 2007), and we always begin with the presumption that an act of the General Assembly is constitutional." Gallaher v. Elam, 104 S.W.3d 455, 459 (Tenn. 2003) (citing State v. Robinson, 29 S.W.3d 476, 479 (Tenn. 2000); Riggs v. Burson, 941 S.W.2d 44, 51 (Tenn. 1997)); Lynch v. City of Jellico, 205 S.W.3d 384, 390 (Tenn. 2006) (citing Osborn v. Marr, 127 S.W.3d 737, 740-41 (Tenn. 2004)). We must construe statutes in a way that "sustain[s] the statute and avoid[s] constitutional conflict if at all possible, and . . . indulge every presumption and . . . resolve every doubt in favor of the statute's constitutionality." Howell v. State, 151 S.W.3d 450, 470 (Tenn. 2004) (citing Taylor, 70 S.W.3d at 721). The presumption of constitutionality applies with even greater force when, as present here, a party brings a facial challenge to the validity of a statute. Waters v. Farr, 291 S.W.3d at 882. In such an instance, the challenger must establish that no set of circumstances exists under which the statute, as written, would be valid. Id. (citing Lynch v. City of Jellico, 205 S.W.3d at 390) (quoting Davis-Kidd Booksellers, Inc. v. McWherter, 866 S.W.2d 520, 525 (Tenn. 1993)). Thus, notwithstanding the determination of the trial court, the Defendants in this appeal have a heavy burden in challenging the constitutionality of the statute.

**Justiciability.** The State, for the first time on appeal, insists that "the Defendant's challenge to the graduated sanctions provisions of the PSA should have been rejected [by the trial court] as unripe and non-justiciable[.]" Because the Defendants have not violated a condition of probation, and no sanction has been or may ever be imposed if they remain compliant, the State argues that the trial court's decision was premature and in error. Construing the Defendants' constitutional challenge as to the facial validity of the PSA rather than to how the law is applied to each Defendant, the Defendants contend that the trial court properly determined that these issues were ripe and justiciable. Much to our bewilderment, Defendant Sims completely abandons his challenge to the constitutionality of the PSA. Defendant Sims nevertheless confusingly insists this issue is ripe and justiciable to determine whether a defendant enters a knowing and voluntary guilty plea. State v. Mellon, 118 S.W.3d 340, 345 (Tenn. 2003) ("a guilty plea is not deemed voluntary where the person entering it does so without understanding of the consequences of his plea") (internal citations/quotations omitted).

As an initial matter, during the trial court proceedings, the State agreed that this issue was ripe and justiciable for the trial court's review. The State changed their position on appeal, and at oral argument, defense counsel for Price argued that this issue was waived. See State v. Adkisson, 899 S.W.2d 626, 635-36 (Tenn. Crim. App. 1994)

("'It is elementary that a party may not take one position regarding an issue in the trial court, change his strategy or position in mid-stream, and advocate a different ground or reason in this Court.'") (quoting State v. Dobbins, 754 S.W.2d 637, 641 (Tenn. Crim. App. 1988)). The State acknowledged in their brief that justiciability was conceded below but insists on appeal that justiciability cannot be waived because it pertains to subject matter jurisdiction. Moreover, the State emphasizes that the Defendants failed to file any written challenges to the statute or to notify the Attorney General and Reporter as required by Tennessee Code Annotated section 8-6-109(b)(9). Under these circumstances, we agree with the State, and conclude that this issue cannot be waived.

"The central concern of the ripeness doctrine is whether the case involves uncertain or contingent future events that may or may not occur as anticipated or, indeed, may not occur at all." B & B Enters. of Wilson Cnty., LLC v. City of Lebanon, 318 S.W.3d 839, 848 (Tenn. 2010) (citing Lewis v. Cont'l Bank Corp., 494 U.S. 472, 479-80 (1990)). In West v. Schofield, 468 S.W.3d 482, 489-90 (Tenn. 2015) (West II), the Tennessee Supreme Court reaffirmed that ripeness inquiries "require[] a court to answer the question of 'whether the dispute has matured to the point that it warrants a judicial decision.'" Id. (quoting B & B Enters., 318 S.W.3d at 848). In determining whether a particular case is ripe, courts typically engage in a two-part analysis, evaluating "[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration." Id. at 490-91 (citing Abbott Labs., 387 U.S. at 149); see also B & B Enters., 318 S.W.3d at 848; Warshak v. United States, 532 F.3d 521, 525 (6th Cir. 2008) (en banc) (describing the two-part inquiry as: "(1) [I]s the claim fit for judicial decision in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass? [A]nd, (2) what is the hardship to the parties of withholding court consideration?" (citations and internal quotation marks omitted)).

In determining that the Defendants had constitutional standing, the trial court's order provided, in pertinent part, as follows:

> The Court has conducted the two-part analysis from [West v. Schofield, 468 S.W.3d 482, 490-491] and [Clark v. Cain, 479 S.W.3d 830, 832(Tenn. 2015)] and finds that the cases at bar meet both requirements of the ripeness test. Id. These are real cases in which a significant question exists as to whether the determination of probation violation matters is exclusively to be made by the judiciary or may be delegated to the executive branch. The constitutional separation of powers question exists now, as it has at every moment on or after January 1, 2017. The Act requires, in felony criminal cases involving a sentence of supervised probation, including the two at bar, that the judge insert a provision within a judgment which transfers the authority to decide common probation violation issues to the executive branch. T.C.A. §40-28-304. The resulting

8

separation of powers question is not hypothetical nor does it depend upon [the Defendant's] being accused of a violation. The question was ripe and fit for resolution the moment an actual person became subject to that provision of the Act.

The constitutional due process issue and equal protection issue is also now ripe and fit for decision. As earlier stated, the Act requires the trial judge to immediately include a provision within a criminal judgment that has the plain effect, validly or not, of limiting due process rights which exist now but which will not be exercised until a future time. The Act establishes two classes of probationers with differing due process rights.

The hardship caused to all parties from the uncertainty surrounding probationer status and acceptable procedure, which would be caused by withholding the resolution of these issues by the courts, outweighs any possible concern about a court prematurely deciding the questions. Furthermore, the issues raised are common to the many thousands of persons likely to be placed on probation in Tennessee on or after January 1, 2017.

The defendant's constitutional challenges are to the facial validity of the Act rather than challenges because of how the law is particularly applied to [the Defendants]. See State v. Crank, 468 S.W.3d 15, 24 (Tenn. 2015); City of Memphis v. Hargett, 414 S. W.3d 88, 103-108 (Tenn. 2013). Therefore, each defendant has constitutional standing. See ACLU v. Darnell, 195 S.W.3d 612, 619 (Tenn. 2006).

In disputing standing on appeal, the State and the dissent rely heavily upon West II, the second in a series of declaratory judgment actions rejected as not ripe by the Tennessee Supreme Court. The defendants in West I originally challenged the constitutionality of the lethal injection protocol, at that time the default method of execution in Tennessee. See West v. Schofield, 380 S.W.3d 105 (Tenn. Ct. App. 2012), perm. app. denied (Tenn. Aug. 17, 2012) (West I). However, as their litigation was pending, the law in question was amended and added several subsections providing electrocution as an alternative method of execution.[4] The defendants then appealed the

---

[4] The Capital Punishment Enforcement Act ("CPEA"), codified as a new subsection of an existing statute, provided, in pertinent part, as follows:

(e) For any person who commits an offense or has committed an offense for which the person is sentenced to the punishment of death, the method of carrying out the sentence shall be by lethal injection unless subdivision (e)(1) or (e)(2) is applicable. If subdivision

9

constitutionality of the amended section of the law and electrocution as a method of execution.  West II, 468 S.W.3d at 485-87.  Under the first prong of the ripeness analysis, fitness for judicial decision, our supreme court considered whether the defendants' electrocution claims were based on an existing legal controversy or on hypothetical and contingent future events that may never occur.  Id. at 491.  Because electrocution did not presently apply to any of the defendants and would not ever apply unless one of two statutory contingencies occurred at some future point, the Court determined the case was not ripe.  Id. at 492.  Under the second part of the ripeness analysis, consideration of whether withholding adjudication of the defendants' claim would impose any meaningful hardship on the parties, the Court concluded that the statute did not "force the [defendants] to make any choice . . . . [it applied] if, and only if, one of two statutory contingencies actually occurs . . . [and] does not direct the [defendants] 'to engage in, or to refrain from, any conduct.'"  Id. (internal citations omitted).

Far from the circumstances outlined in the statute challenged by the defendants in West II, in the case at bar, pursuant to Code section 40-28-304, a trial court must include as a condition for all individuals placed on supervised probation that "the department" may impose graduated sanctions for probation violations.  In other words, the trial court is required by law to impose the system of graduated sanctions on every defendant eligible for supervised probation in Tennessee.  This is neither theoretical nor contingent on future events.  It became ripe and fit for judicial decision at the precise moment that the trial court was required to include this condition and at the precise moment that the Defendants became subject to this statute.  See Buckley v. Valeo, 424 U.S. 1, 680 (1976) (quoting Socialist Labor Party v. Gilligan, 406 U.S. 583, 588 (1972)) ("'Where the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect.'"); United States v. Vaquera-Juanes, 638 F.3d 734, 736 (10th Cir. 2011) (easily rejecting the Government's "general and sweeping assertion that challenges to conditions of supervised release . . . are never ripe because the conditions may never be enforced" and concluding that "[c]onditions of supervised release form a part of the criminal judgment and thus . . . a challenge to them involves a genuine case or controversy because the judgment is a final court order

(e)(1) or (e)(2) is applicable, the method of carrying out the sentence shall be by electrocution.  The alternative method of execution shall be used if:
> (1) Lethal injection is held to be unconstitutional by a court of competent jurisdiction in the manner described in subsection (d); or
> (2) The commissioner of correction certifies to the governor that one (1) or more of the ingredients essential to carrying out a sentence of death by lethal injection is unavailable through no fault of the department.

Tenn. Code Ann. § 40-23-114(e) (Supp. 2014).

10

binding on an incarcerated defendant at the time of his appeal); United States v. Mike, 632 F.3d 686, 692-93 (10th Cir. 2011) ("[S]upervised release terms are directly appealable, despite the fact that they are subject to later modification, because they are part of the sentencing court's final orders."); United States v. Smith, 606 F.3d 1270 (10th Cir. 2010)(same).

As to the second prong of the ripeness analysis, we conclude that the Defendants will suffer a hardship if their claims are not heard because the condition of probation is imposed by operation of law and immediately deprives them of judicial review of certain aspects of their probation. It directly effects the day-to-day activities of probationers because (1) they are required to comply with the sanctions grid by operation of law; (2) their right to judicial determination of probation violations, albeit "technical," is transferred from the court to a probation or parole officer; and (3) there is no judicial review of these infractions. Here, it is not a question of when or whether the Defendants violate their probation but rather the validity of the graduated sanctions grid as a condition of their probation. We are simply unable to distinguish the posture of this case from the many appeals from a trial court's imposition of special conditions of probation which this court has reviewed immediately after probation is granted. See Tenn. Prac. Crim. Prac. & Procedure § 32:92 fn. 10 (noting that a defendant may challenge the validity of probation conditions in a revocation hearing or after probation is granted) (citing Stiller v. State, 516 S.W.2d 617, 620 (Tenn. 1974)); State v. Bouldin, 717 S.W.2d 584 (Tenn. 1986) (defendant challenged condition of probation immediately after sentencing)); see also State v. Pressinell, No. E2008-01290-CCA-R3-CD, 2009 WL 321215, at *1 (Tenn. Crim. App. Feb. 10, 2009) (modifying onerous condition of probation after sentencing). Moreover, the State's position now, that this issue is non-justiciable because the Defendants' probation has yet to be violated, is contrary to the position they have taken previously when a defendant fails to object to the trial court's imposition of a condition of probation at sentencing. See e.g., State v. Burdin, 924 S.W.2d 82, 84 (Tenn. 1996) (rejecting the State's argument that the defendant waived his constitutional claim to the imposition of a probation condition because he did not object at the sentencing hearing). Based on this authority and analysis, we conclude, without hesitation, that these issues are ripe and justiciable.

**Separation of Powers**. We now turn to address the substance of the issues raised in this appeal. The State argues that the trial court erred in determining that the PSA interfered with the adjudicative function of the judicial branch of government in violation of the separation of powers doctrine. The State contends that "the correctional and rehabilitative processes of the parole and probation system, including the supervision of individuals sentenced to community-based probation as an alternative to incarceration, are properly vested in the executive branch." Moreover, the State maintains that the "authority to impose graduated sanctions for technical, non-criminal probation violations in conjunction with that supervision is a legitimate and permissible component of [the]

11

department's supervisory authority." In response, Defendant Price, without elaboration on appeal, incorporates the trial court's order regarding this issue. Six pages of the trial court's order are dedicated to the resolution of this issue. The relevant portion of the trial court's determination is as follows:

> The Act mandates that the sentencing judge shall include, as a condition in a judgment or order of supervised probation, a provision adopting the administrative graduated sanctions regimen. T.C.A. §40-28-304. This regimen, in turn allows an executive branch employee, the probation officer, to determine, in "the most common" instances, whether a violation of a probation condition has occurred. T.C.A. §40-28-303(a). If so, the probation officer is to impose sanctions generally from a preset or presumptive grid. Id. Confusingly, however, the Act also allows TDOC to impose "graduated sanctions that deviate from those prescribed." T.C.A. § 40-28-303(b). The imposition of a graduated sanction creates an instance of double jeopardy. T.C.A. §40-28-305(e).

> It was suggested at the evidentiary hearing held in these cases that the use of lower level graduated sanctions, had always been part of probation supervision, although informally, and that the Act, probably, would result in no real change. This is not accurate. The use of any probation sanction under prior law was at the discretion and subject to the review of a judge. This is not true under the Act. This is a sea change of constitutional import.

> Apparently, all other statutes, providing contrary to the Act, are repealed. T.C.A. §40-28-305(a) . . . .

> After a review of the controlling Tennessee authority regarding the separation of power between the legislative, executive and judicial branches, this Court holds that it is the exclusive constitutional role of the legislature to declare an act to be criminal, to fix the range of punishment and to say whether that sentence may be considered for probation and, if so, under what conditions, provided that those conditions are themselves constitutional. The Court further holds that the specific determination of whether a violation of probation condition has occurred and, if so, to determine an appropriate sanction is, in a constitutional sense, exclusively within the province of the judiciary, not the executive branch. Without taking any pleasure in doing so, the Court, therefore, determines that the Act does "frustrate or interfere with the adjudicative function . . . [of] the judicial branch of government." [Mansell v. Bridgestone Firestone N. Am. Tire, LLC, 417 S.W.3d 393, 402 (Tenn. 2013)].

12

To hold otherwise would allow the removal of an important adjudicative power regarding criminal sentences from the courts and the placement of that power in the executive department. Taken to its logical conclusion, this might also mean that an executive branch employee or independent contractor could constitutionally decide whether a probation violator goes to jail as a sanction, and, if so, how long that person stays in jail. The Tennessee Constitution forbids the exercise of such adjudicative power by the executive department.

In review of this issue, we recognize that the primary separation of powers provisions of the Tennessee Constitution are Article II, Section 1, which states that "the powers of the government shall be divided into three distinct departments: the Legislative, Executive, and Judicial," and Article II, Section 2, which states that "no person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted." The doctrine of separation of powers, as set forth in these two sections of the Tennessee Constitution, "is a fundamental principle of American constitutional government." State By & Through Town of S. Carthage, Tenn. v. Barrett, 840 S.W.2d 895, 897 (Tenn. 1992) (citing Underwood v. State, 529 S.W.2d 45, 47 (Tenn. 1975)). The separation of powers clause "prohibits one branch from encroaching on the powers or functions of the other two branches." Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 843 (Tenn. 2008) (citing Tenn. Const. art. II, § 2; State v. Brackett, 869 S.W.2d 936, 939 (Tenn.Crim.App.1993)). "In general, the 'legislative power' is the authority to make, order, and repeal law; the 'executive power' is the authority to administer and enforce law; and the 'judicial power' is the authority to interpret and apply law." Colonial Pipeline Co., 263 S.W.3d at 843, n. 8.

Moreover, the grant of power to the judicial branch is contained in Article VI, Section 1, of the Tennessee Constitution, which states that

[t]he judicial power of this state shall be vested in one Supreme Court and in such Circuit, Chancery and other inferior Courts as the Legislature shall from time to time, ordain and establish; in the Judges thereof, and in Justices of the Peace. The Legislature may also vest such jurisdiction in Corporation Courts as may be deemed necessary. Courts to beholden by Justices of the Peace may also be established.

This section, coupled with Article II, Section 1, clearly guarantees the independence of the judiciary. Summers v. Thompson, 764 S.W.2d 182, 196 (Tenn.1988) (Drowota, J., concurring). The United States Supreme Court has also held that separation of powers prohibits courts from delegating "essential attributes of the judicial power." United

States v. Raddatz, 447 U.S. 667, 683 (1980) (holding delegation to magistrate judges does not violate Article III so long as the ultimate decision is made by district court); Crowell v. Benson, 285 U.S. 22, 51 (1932) ("essential attributes" of court may not be delegated to another tribunal). Delegations of judicial power to non-judicial officers, a practice commonly referred to as the non-delegation principal, is therefore barred by Article VI, Section 1 of the Tennessee Constitution, which vests sole power for adjudicatory functions in the Courts of the State of Tennessee.

In State v. Mallard, 40 S.W.3d 473, 483 (Tenn. 2001), the Tennessee Supreme Court described inherent judicial powers as:

> [T]he powers to hear facts, to decide the issues of fact made by the pleadings, and to decide the questions of law involved. As an essential corollary to these principles, any determination of what evidence is *relevant,* either logically or legally, to a fact at issue in litigation is a power that is entrusted solely to the care and exercise of the judiciary. Indeed, a court's constitutional function to independently decide controversies is impaired if it must depend on, or is limited by, another branch of government in determining and evaluating the facts of the controversies it must adjudicate. Consequently, any legislative enactment that purports to remove the discretion of a trial judge in making determinations of logical or legal relevancy impairs the independent operation of the judicial branch of government, and no such measure can be permitted to stand.

Id. (internal citations and quotations omitted).

More recently, in State v. Lowe, No. M2014-00472-SC-R11-CD, --- S.W.3d ---, 2018 WL 3491044 (Tenn. 2018), the Tennessee Supreme Court, echoed the dictates of Mallard, and emphasized that:

> [T]he consent of the courts to legislative regulation of inherent judicial authority is purely out of considerations of inter-branch comity and is not required by any principle of free government. To hold otherwise would be to irreparably damage the division of governmental power so essential to the proper maintenance of our constitutional republic. As the Court of Appeals has stated,
>
> In deference to separation of powers, judges will lean over backward to avoid encroaching on the legislative branch's (power).
>
> However, the separation of powers doctrine, properly understood, imposes on the judicial branch not merely a Negative duty not to interfere with the

14

executive or legislative branches, but a Positive responsibility to perform its own job efficiently. This Positive aspect of separation of powers imposes on courts affirmative obligations to assert and fully exercise their powers, to operate efficiently by modern standards, to protect their independent status, and to fend off legislative or executive attempts to encroach upon judicial [prerogatives]. Id. at 481-82 (emphasis added) (quoting Anderson Cnty. Q. Ct., 579 S.W.2d at 878).

Thus, we recognized that "'[i]t is an imperative duty of the judicial department of government to protect its jurisdiction at the boundaries of power fixed by the Constitution,'" id. at 482 (quoting State ex rel. Shepherd v. Nebraska Equal Opportunity Comm'n, 251 Neb. 517, 557 N.W.2d 684, 693 (1997) ), and that "the legislature can have no constitutional authority to enact rules, either of evidence or otherwise, that strike at the very heart of a court's exercise of judicial power," id. at 483 (citation omitted).

State v. Lowe, 2018 WL 3491044, at *9-10 (Tenn. July 20, 2018).

Despite the clear mandate of the separation of powers provisions, Tennessee courts have long recognized that it is impossible to preserve perfectly the theoretical lines of demarcation between the executive, legislative, and judicial branches of government. Bank of Commerce and Trust Company v. Senter, 149 Tenn. 569, 260 S.W. 144, 151 (1924); Richardson v. Young, 122 Tenn. 471, 493, 494, 125 S.W. 664 (1910). There is necessarily a certain amount of overlapping. The three departments are interdependent. Id.; see also Mistretta v. United States, 488 U.S. 361, 390 (1989) (acknowledging that sentencing is a shared responsibility among the branches of government). In such circumstances, "the proper inquiry focuses on the extent to which [the overlap] prevents the Executive Branch [or Judiciary Branch] from accomplishing its constitutionally assigned functions." Nixon v. Administrator of General Services, 433 U.S. 425, 443 (1977) (citing United States v. Nixon, 418 U.S. 683, 711-12 (1974)). "Only where the potential for disruption is present must we then determine whether that impact is justified by an overriding need to promote objectives within the constitutional authority of Congress." Id. (citing Nixon, 418 U.S. at 711-12). Where a legislative enactment does not frustrate or interfere with the adjudicative function of the courts, it does not constitute an impermissible encroachment upon the judicial branch of government. Mansell, 417 S.W.3d at 403-04; Lynch v. City of Jellico, 205 S.W.3d at 393 (citing Underwood v. State, 529 S.W.2d at 47).

We recognize that at common law, there was no such thing as "probation," see Atchley v. State, 176 Tenn. 514, 144 S.W.2d 748 (1940) (observing that prior to the passage of Chap. 76, Acts of 1931, judges had no power of suspension or parole), and the authority to grant probation springs solely from legislative action. State v. Burdin, 924

15

S.W.2d 82 (1996). However, sentencing has long been held to be fundamentally a judicial power. See Ex parte United States, 242 U.S. 27, 41 (1916) (recognizing in dictum that "Indisputably under our constitutional system the right to try offences against the criminal laws and upon conviction to impose the punishment provided by law is judicial. . . ."); Whitehead v. United States, 155 F.2d 460, 462 (6th Cir. 1946) ("Fixing the terms and conditions of probation is a judicial act which may not be delegated."); State v. Johnson, 630 N.W.2d 583, 588 (Iowa 2001) ("Subject to the statutorily prescribed punishments for criminal offenses, the actual sentencing of a defendant is an independent function that is the *sole* province of the judiciary.").

"The imposition of a sentence, including the terms and conditions of supervised release, is a core judicial function that cannot be delegated," see United States v. Johnson, 48 F.3d 806, 808 (4th Cir. 1995), and "[p]reserving the judiciary's exclusive authority to impose sentences is an area in which it is important for courts to be vigilant." United States v. Morin, 832 F.3d 513, 518 (5th Cir. 2016); see also Tenn. Code Ann. § 40-35-212 (a) ("In imposing a sentence, the court shall determine under what conditions a sentence will be served as provided by law."). Similarly, the trial court's discretion to determine the conditions of probation, to modify conditions of probation, and to revoke probation are core functions of the judiciary. See State v. Archie, 322 S.C. 135 (S.C. Ct. App. 1996) (holding that determination of conditions of probation is a judicial function which cannot be delegated to an executive agency such a department of probation and striking legislative act purporting to do so as violation of separation of powers); State v. Henderson, 527 N.W.2d 827-829 (Minn. 1995) (recognizing that determining conditions of probation is exclusively a judicial function that cannot be delegated to executive agency); see also United States v. Nash, 438 F.3d 1302, 1305-06 (11th Cir. 2006) (core judicial function includes sentencing defendant and imposition of condition of probation); United States v. Pruden, 398 F.3d 241, 250 (3d Cir. 2005) (holding that decisions involving the "nature or extent of the punishment imposed upon a probationer" were functions of the judiciary because the right to impose punishment is judicial); United States v. Heath, 419 F.3d 1312, 1315 (11th Cir. 2005) (holding that delegating to a probation officer the decision whether a defendant will participate in a treatment program was plain error); United States v. York, 357 F.3d 14, 21 (1st Cir. 2004) (holding that a decision is a core judicial function if it is a "significant penological decision" such as determining whether a probationer should undergo specific types of treatment).

Probation, not to be confused with parole, is a conditional suspension of a custodial sentence to be imposed and administered by a judge. Significantly, the trial court *retains jurisdiction* during the probationary sentencing period. See Tenn. Code Ann. § 40-35-303(b) (noting that a court shall have authority to impose probation as part of its sentencing determination at the conclusion of the sentencing hearing); Tenn. Code Ann. § 40-35-311 (a) (Whenever it comes to the attention of the trial judge that any defendant who has been released upon suspension of sentence has been guilty of any

breach of the laws of this state or has violated the conditions of probation, the trial judge shall have the power to cause to be issued under the trial judge's hand a warrant for the arrest of the defendant as in any other criminal case.)  Probation offers a defendant found guilty of an offense the "opportunity to rehabilitate himself without institutional confinement under the tutelage of a probation official and under the continuing power of the [trial court] to impose institutional punishment for his original offense in the event that he abuse this opportunity."  Roberts v. United States, 320 U.S. 264, 272 (1943) (distinguishing between power to suspend execution of a sentence and the alternative power to defer its imposition).  In other words, the trial court retains jurisdiction to ensure that the probationer properly complies with its order and will revoke probation only after affording due process.  Probation is therefore "a matter of favor" granted by the court as recognition that a convicted defendant may benefit from an opportunity "to take advantage of an opportunity for reformation which actual service of the suspended sentence might make less probable."  Burns v. United States, 287 U.S. 216, 220 (1932). It is conferred by statutory privilege, not a matter of constitutional right.  Gagnon v. Scarpelli, 411 U.S. 778, 782 n. 4 (1973).

Unlike probation, parole is an act of grace granted by the *executive branch* after the individual has served part of his sentence.  Knight v. United States, 73 F.3d 117, 119 (7th Cir. 1995) (emphasis added); Tenn. Code Ann. § 40-35-503(a) ("The board of parole has the authority to parole inmates with felony sentences of more than two (2) years or consecutive felony sentences equaling a term greater than two (2) years.).  The trial court does not have jurisdiction over parole matters, and a parolee will not again appear before the court even if there is a violation of parole.  Accordingly, parole or an individual's parole eligibility status does not implicate the trial court's sentencing authority.

The question here is whether the authority delegated by the General Assembly to the department in mandating that all probationers be subject to the graduated sanctions matrix has impermissibly encroached upon the judicial powers of the courts.  Given the above law, we are constrained to conclude that Code sections 40-28-301 to -306 of the PSA prevent the judiciary from accomplishing its constitutionally assigned functions regarding sentencing.  Moreover, the General Assembly's action in promulgating these provisions of the PSA is not justified by an overriding need to promote its objectives of rehabilitating individuals on community supervision, reducing the number of incarcerated individuals, and reducing the costs associated with incarceration because trial courts have the discretion to impose graduated sanctions and can approve graduated sanctions recommended by probation officers.  Accordingly, as we will explain more fully below, these portions of the PSA frustrate or interfere with the adjudicative function of the courts and impermissibly encroach upon the judicial branch of government in violation of the non-delegation principle rooted in the separation of powers doctrine.

17

Mandating all probationers to be subject to the graduated sanctions system for probation violations, no matter how minor, strikes at the very heart of the trial court's inherent judicial powers. The trial court exercises its fact-finding determination in reaching the conclusion to place an offender on probation. This determination is inextricable from the underlying facts of the case, with which the trial court is uniquely familiar. The mandatory condition of probation, an overly broad delegation to the department, eviscerates the trial court's fact-finding determination for conditions of probation. It is problematic that the PSA's system of graduated sanctions is a required condition of a probationer's sentence, regardless of whether the trial court believes it is appropriate in any given case. There is no connection or nexus between the trial court's grant of probation, the court-imposed conditions, and the imposition of graduated sanctions. For example, under the PSA, the department is permitted to send a probationer for drug treatment even if there was nothing in the trial court's conditions of probation banning drug use. See State v. Stevens, 373 S.C. 595, 871-72 (S.C. 2007) (it is permissible for legislature to create policies and procedures for imposing conditions of supervision so long as these conditions do not diminish or expand court-imposed conditions). Additionally, the system of graduated sanctions authorizes the department to determine whether the offender should participate in particular programs, not just to determine the details surrounding the offender's enrollment in a program after the trial court determines that such a program is necessary. While the department has broad power "to manage aspects of sentences and to supervise probationers and persons on supervised release with respect to all conditions imposed by the court," those powers are limited by [section of Tennessee constitution separation of powers and supremacy]. See United States v. Johnson, 48 F.3d 806, 808 (4th Cir. 1995).

By reaching this result, we in no way question the wisdom of the legislature in promulgating an administrative probation sanction process. However, upon our review of the majority of states that have adopted similar graduated sanction systems,[5] the trial court's discretionary function is not eroded in this manner. Under the system implemented here, the judiciary has become reliant upon the executive branch to determine the degree of and sanction for violations of probation. The legislature's delegation of authority to the executive in this case ultimately deprives the court of the power to decide cases, making the delegation unconstitutional. Even if sentencing is

---

[5] Compare (California) Ann. Cal. Penal Code § 1203.35(2);§ 3454(b): (Florida) F.S.A. § 948.01(3)(1)-(3): (Georgia) G.C.A. § 42-8-23(f);§ 42-8-23(a),(c);§ 42-8-35(a)(16): (Kansas) 2017 KS H.B. 2260; KSA 21-6607; K.S.A.2014 Supp. 22-3716(c): (Kentucky)KRS.§439.551(1);§439.553;§439.3108(1)(a);§ 439.3108(4);§ 439.3108(6); (Maryland) MD Code § 6-121;§ 6-111(5): (Mississippi) Miss. Code Ann. § 47-7-38(4): (New York); (South Dakota) SDCL § 16-22-13: (Vermont) 28 V.S.A. § 304(c) with (Alabama) Ala. Code § 15-22-54(g); § 15-22-54(h): (Nebraska) Neb. Rev. St. § 29-2266.03(3)(a)(b)(c): (Utah) U.C.A. § 64-13-29(1)(a)(ii); § 64-13-6(2) (sanctions imposed by department but required to notify court); see also State v. Horn, 226 Wis. 2d 637 (1999) (holding that administrative revocation proceeding did not violate separation of powers).

viewed as a shared power between the executive and the legislative branch as argued by the State, these provisions of the PSA frustrate and substantially interfere with the core functions of the judicial branch. Any holding to the contrary would effectively discourage trial courts from imposing probation as part of the imposition of sentence, which cannot be the desired intent of the legislature. Because sections 40-28-301, -306 of the PSA removes the discretion of a trial judge in making determinations of logical or legal relevancy and collectively impairs the independent operation of the judicial branch of government, we must follow the dictates of Mallard and Lowe, and conclude that it violates the Tennessee Constitution's Separation of Powers Clause and, therefore, cannot be upheld. State v. Lowe, 2018 WL 3491044, at *10.

**Due Process**. On appeal, the State insists that the trial court erred in "equating the imposition of graduated sanctions with probation revocation" which, in their view, are not the same. Moreover, because the PSA does not authorize probation officers to revoke probation, the State contends that Gagnon/Morrissey due process concerns are not implicated. The State ultimately contends the administrative review provisions of the PSA satisfy any due process concerns. The Defendant again incorporated the trial court's reasoning and order on appeal, without significant elaboration. The trial court determined that the provisions of the PSA ran afoul of due process. In striking the administrative provisions, the trial court reasoned as follows:

> [T]he Tennessee Constitution states that due process is required when a man is " . . . taken or imprisoned, disseized of his . . . liberties or privileges." The drafters recognized that to be "taken or imprisoned" or "disseized of . . . liberties or privileges" are distinct events which are equally entitled to due process protections. As is relevant here, a probationer need not be "taken or imprisoned" by the State to have been "disseized of . . . liberties or privileges." Tenn. Const. Article I, §8.

> A person's liberty interest or privileges are adversely and seriously impacted in many forms which are less burdensome than incarceration. These forms are among the "non-prison offender accountability measures" which may be imposed by the probation officer pursuant to the Act which include participation in:

> (a) mental health treatment;
> (b) work crews; and
> (c) residential treatment centers.

> T.C.A. § 40-28-301.

> . . . .

19

It is beyond doubt that a sanction order issued by a probation officer which directs a person to, without that person's free and knowing consent, somehow obtain "mental health treatment" or to come here or go there and "work" or to move from one's home to a "residential treatment center" chosen by the probation officer, impacts important liberty interests or privileges which are protected by the constitutions. Id. Each such order makes probation "more onerous[.]" Merriweather at 885. Whether these type of administrative responses to violations are considered "violation revocation proceedings", "sanctions other than revocation", "treatment" or punishment, does not determine that process which is due." T.C.A. § 40-28-302. The District Attorney General concedes that, from the standpoint of the probationer, these words will all be interpreted as *punishment.* By whatever name known, only such orders issued following the exercise of constitutional due process can be valid.

Moreover, whether considered to be a part of the criminal process or not, a probationer is entitled to a fair hearing before an impartial or "independent decisionmaker" who will determine whether a violation of probation has occurred. A supervising probation officer is not an "independent decisionmaker[.]" Gagnon at 786; Merriweather at 885-886.

The Act veils the deprivation of due process by requiring the sentencing judge in every felony case, where probation is granted, to initially include, as a condition of probation, a provision that the probation officer "may" make such sanction orders at a later time and without further hearing. T.C.A. § 40-28-304. This is the linchpin to the entire suspect system. The legislature cannot mandate that a trial judge impose [conditions] in a criminal judgment today, which if adhered to in the future, will deprive a person of constitutional due process.

. . . .

For the foregoing reasons, this Court must hold that the administrative sanctions provisions of the Act which relate to compelled mental health treatment, participation in work crews, forced location within residential treatment centers and other like requirements, disseizing a person of significant liberties or privileges, violate the federal and state constitutional due process rights of [the Defendants], and any probationer sentenced on or after January 1, 2017, in that they:

(a) eliminate any meaningful opportunity of the probationer to object to a "presumptive sanction" and to seek a fair hearing aided by counsel before a neutral and independent decisionmaker;

(b) limit the right of the probationer to contest the issue of guilt of the alleged violation to only those "permitted by the system of graduated sanctions". T.C.A. § 40-28-305(c).

(c) fail to provide a mechanism to determine the indigency of an accused probationer and fails to provide for the right of legal counsel without cost to an indigent person;

(d) eliminate the rights of the probationer to confront and cross examine his or her accusers or to review the evidence, Id.;

(e) abrogate the right of the probationer to present evidence, Id.; and

(f) abrogate the right to an independent post determination review of the probation violation decision in affected cases.

As relevant here, the Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation. Black v. Romano, 471 U.S. 607 (1985); Bearden v. Georgia, 461 U.S. 660, 666, and n. 7 (1983). In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court determined that although a parole revocation hearing does not trigger "the full panoply of protective rights due a defendant" in a criminal proceeding, the liberty issues involved implicate significant rights protected by the due process clause of the Fourteenth Amendment. The same minimum requirements of due process apply to all parole and probation revocation hearings. See Gagnon v. Scarpelli, 411 U.S. 778 (1973) (parole and probation are constitutionally indistinguishable). Specifically, Morrissey/Gagnon due process protections require the following:

[P]reliminary and final revocation hearings. At the preliminary hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decision-maker, and a written report of the hearing. [Morrissey v. Brewer, 408 U.S. at 487, (1972)].

21

The final hearing is a less summary one because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause, but the "minimum requirements of due process" include very similar elements:

They include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Morrissey v. Brewer, 408 U.S. at 489.

Both the probationer or parolee and the State have interests in the accurate finding of fact and the informed use of discretion—the probationer or parolee to insure that his liberty is not unjustifiably taken away and the State to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community. Gagnon, 411 U.S. at 785; Practy v. State, 525 S.W.2d 677, 680 (Tenn. Crim. App.1974) ("This State's procedure for revocation of sentence suspension and probation is an orderly one affording a probationer full protection of his constitutional right to due process."); State v. Leiderman, 86 S.W.3d 584, 589 (Tenn. Crim. App. 2002); State v. Stubblefield, 953 S.W.2d 223, 225 (Tenn. Crim. App.1997).

We begin by noting that the trial court's order found only those graduated sanctions defined as rehabilitative interventions compelling mental health treatment, residential treatment, work crew, and other like requirements to violate due process. The State did not address the trial court's explicit conclusion that imposition of these rehabilitative interventions is more onerous than others included in the PSA. Indeed, under the PSA, a probationer is mandated to submit to a broad array of sanctions at some future point after sentencing, without any judicial oversight. See State v. Merriweather, 34 S.W.3d 881, 885-86 (Tenn. Crim. App. 2000) (prohibiting modification of probation supervision in probation conditions without the defendant's consent when they are more onerous than those originally imposed by the trial court). Based on the above law, we are constrained to agree with the trial court and conclude that the relevant portions of the PSA violate due process because (1) it does not allow for offenders to see the government's evidence against them, (2) it does not provide a hearing where probationers can present their own evidence and cross-examine adverse witnesses, and (3) it does not

22

provide probationers with an opportunity to have their case heard by a neutral and impartial judge.[6]

As an initial matter, the State misses the mark in arguing that due process is not implicated because imposition of "graduated sanctions" is not the same as revocation of probation, which remains within the sole discretion of the trial court. We see this as a distinction without any meaningful difference. Grounds for violations of probation are the same as those for imposition of graduated sanctions. The fact that the graduated sanction amounts to less than full revocation does not make it any less a penalty for an infraction of the rules of probation. See e.g. State v. Paxton, 742 N.E.2d 1171, 1172-73 (Ohio Ct. App. 2000) (holding that trial court could not delegate to probation officer the job of determining whether a minor violation of probation had occurred or of imposing additional jail time if the probation officer finds a violation because probationer had right to notice, hearing, presentation of evidence). Moreover, the State's position is inapposite to the language of the PSA in that if the probationer objects to or unsuccessfully completes the graduated sanction, it becomes a violation of probation. Finally, the rehabilitative interventions specifically identified in the trial court's order have been traditionally held to carry significant liberty interests. See e.g State v. Phillips, 968 S.W.2d 874, 879 (Tenn. Crim. App. 1996) (recognizing that involuntary commitment to a mental institution constitutes a deprivation of liberty that invokes the constitutional protection of procedural due process) (citing Jones v. United States, 463 U.S. 354, 361 (1983) and Addington v. Texas, 441 U.S. 418, 425 (1979)); State ex rel. McCormick by Hirst v. Burson, 894 S.W.2d 739, 743 (Tenn. Ct. App. 1994) (civil commitment to a hospital produces "a massive curtailment of liberty" and therefore requires due process protection) (citing Vitek v. Jones, 445 U.S. 480, 491-92 (1980)). Accordingly, we conclude that the minimal due process protections afforded under Gagnon/Morrissey apply.

As relevant here, the relevant portions of the PSA gave the department the authority to develop an administrative review process to provide supervised individuals with the option to object and seek administrative review of certain sanctions, if permitted. We have carefully reviewed the graduated sanctions grid and the testimony from the hearing, and it remains unclear which sanctions are permitted to be reviewed. Nevertheless, a supervised individual is given notice of the intended sanction, which informs them of the violation or violations alleged, the date or dates of the violation or violations, and the graduated sanction. If the supervised individual objects to the imposition of the sanction or sanctions, when permitted by the system of graduated

---

[6] As these provisions of the PSA were part of an omnibus bill, there was sparse discussion on this topic prior to its passage. However, Senator Mike Bell voted against inclusion of this section citing due process concerns. See "Public Safety Act of 2016," H.B. 2576, 2016 Sess. 109th General Assembly (Tenn.Apr.19,2016),http://wapp.capitol.tn.gov/apps/Billinfo/default.aspx?BillNumber=HB2576&ga=109( statement beginning at 3:28:48 on video recording).

sanctions, the individual is entitled to an administrative review to be conducted by the department within five (5) days of the issuance of the notice. If the department affirms the recommendation contained in the notice, the sanction or sanctions shall become effective immediately. The PSA provides that the review shall be conducted by the chief supervision officer, who shall be impartial and trained to hear cases regarding graduated sanctions for violations of supervision conditions.

The above process falls woefully short in detailing what in fact will occur in the administrative review by the department. Of import to our analysis is the lack of any *hearing* during which the offender may present their own evidence, cross-examine adverse witnesses, and see the government's evidence against them. In rejecting the State's argument that the above procedure satisfies due process, we are mindful that

> [W]here governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots. They find expression in the Sixth Amendment which provides that in all criminal cases the accused shall enjoy the right 'to be confronted with the witnesses against him.' This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, . . . but also in all types of cases where administrative and regulatory actions were under scrutiny.

See Greene v. McElroy, 360 U.S. 474, 496-97 (1959) (internal citations/quotations omitted). There is likewise no record of the proceedings, which makes impossible for any genuine review of the sanction if it results in a violation of probation.

Moreover, the above administrative review does not provide probationers with an opportunity to have their case heard by a neutral and impartial judge. Trial courts, not the department, must determine whether a violation occurred, no matter how minor, and the appropriate sanction or consequence because probationers are entitled to greater rights than parolees. Probationers, based on their location on the continuum of reductions in freedoms, see Turner, 297 S.W.3d 155, 162-63, occupy a place closest to that of free individuals. Of these greater rights given to probationers, one of the most important rights is to have an impartial judge, rather than a member of the executive branch, make decisions regarding probation violations. Judges are the quintessential neutral and impartial decision makers, and the Tennessee Supreme Court has long recognized that

24

"the right to an impartial judge is a fundamental constitutional right." State v. Blackmon, 984 S.W.2d 589, 591 (Tenn. 1998) (citing State v. Benson, 973 S.W.2d 202, 205 (Tenn. 1998)).

A judge, rather than a probation officer or supervisor, is in the best position to exercise judicial discretion in determining whether a violation actually occurred and, if so, what the appropriate consequence or sanction should be for the violation following a hearing with appropriate due process safeguards. Trial courts are also better suited to make required determinations for indigency, see State v. Dye, 715 S.W.2d 36, 40 (Tenn. 1986) (requiring finding of willfulness prior to revocation for failure to pay fines/fees), and hearsay evidence, see e.g. State v. Wade, 863 S.W.2d 406, 407 (Tenn.1993) (requiring finding of good cause and reliability prior to admission of hearsay). Finally, the concept that a trial court, rather than the department, should adjudicate probation violations, no matter how minor, is supported by the emergence of Drug Courts, Mental Health Courts, and other courts that use a team approach, of which the trial judge is a member, to more effectively encourage the rehabilitation of offenders. Accordingly, based on the above reasoning and analysis, we conclude that the above provisions of the PSA lack the minimum due process protections afforded under Gagnon/Morrissey.

**Equal Protection.** In its last issue in this appeal, the State argues that the trial court's ruling regarding equal protection was "ill-founded." Because every defendant sentenced to release or community supervision is subject to imposition of the graduated sanctions, the State argues the precise "classification of probationers" in the trial court's order is unclear. Nevertheless, the State contends that probationers facing revocation and those facing graduated sanctions are not similarly circumstanced. The State policy of "assisting the offender to remain compliant and crime-free in the community," see Tenn. Code Ann. §40-28-302(2016 Supp.), is more than sufficient to justify the differential treatment of the two differentially-circumstanced categories of probationers. The Defendant did not provide any independent analysis of this issue and relied entirely upon the trial court's order. Here, we are inclined to agree with the State. While the trial court's order was extensive, it did not clearly identify the two classifications of probationers in its analysis. As such, we conclude the trial court erred by ruling that the PSA violated constitutional equal protection. However, this has no effect upon our decision to affirm the trial court's judgments.

## CONCLUSION

Based on the above authority and analysis, we affirm the judgments of the trial court.

_____
CAMILLE R. MCMULLEN, JUDGE